Case number 20-3445 and 20-3498. Douglas Sullinger et al v. Carol Sullinger et al. All arguments not to exceed 20 minutes per side. Mr. Joseph Brian Clark for the plaintiffs. Thank you and may it please the court. My name is Joseph Clark and I represent Appellants Vendita Technology Group Incorporated, Chris Andrews and William Smith. I've reserved five minutes for rebuttal. The claims in this case stem from the installation and operation of illegal wiretapping equipment inside the corporate offices of Vendita Technology Group Incorporated, a company owned exclusively by Douglas Sullinger. In March 2015, Mrs. Sullinger hired Back Solutions Limited to install wiretapping equipment in various areas of Vendita's offices in the absence of any authority or authorization to enter or remotely surveil the property. Douglas Sullinger and two employees, Chris Andrews and William Smith, joined Vendita in bringing claims against the defendants as a result of their improper surveillance of Vendita's offices. The plain alleged violations of both federal and state wiretapping laws, the common law claim of invasion of privacy, as well as several additional claims asserted only by Mr. Sullinger and Vendita, including trespass and tortious interference. Appellants Vendita, Andrews and Smith have 2019 order for summary judgment, the October 11, 2019 order in limine, as well as the April 16, 2020 order for summary judgment. The district court's June 2019 order granted judgment as to all claims brought by Vendita against the appellee, holding they were barred by the by claim preclusion. Its decision was based upon a judgment rendered by the Domestic Relations Court in Lucas County, Ohio, stemming from the party's 2015 divorce. As a result of its application of claim preclusion, the district court found that Vendita had no remaining claims and was therefore dismissed from the action. Vendita appeals his decision on the grounds that the district court erred in holding its claims were precluded because they were not and could not be fully and fairly litigated by the Domestic Relations Court. Following Vendita's dismissal, appellee moved to the court to limit further argument and or evidence as to her alleged authority to enter the Vendita offices and install surveillance equipment. On October 11, 2019, the district court concluded that she was authorized to enter the premises as she, at the time of the installation, was a majority interest in one of the Vendita entities. Counsel, I'm a little confused. Are you arguing claim preclusion or issue preclusion before us? Claim preclusion, Your Honor. Your brief talks about issue preclusion. I'm sorry, issue preclusion. I forget. Thank you. So you're arguing issue preclusion, but I think you just said the court, the district court, ruled on claim preclusion. I'm sorry, Your Honor, if I misspoke. I do apologize. What is your position then? I thought I read the district court is ruling on claim preclusion or race judicata. We are arguing on race judicata, Your Honor. I do apologize. Okay, then why does your brief talk about issue preclusion? Well, Your Honor, I think at this stage, because if I may just, to the issue of issue preclusion, it was... What are you arguing? Are you arguing issue preclusion or claim preclusion? It's issue preclusion, Your Honor. I'm sorry. I apologize. So, once again, you're arguing issue preclusion or claim preclusion. Which one are you arguing? The issues that were raised in the divorce, the district court says that the issues that were raised in the divorce are now barred in the federal court action. Okay. That which is now a claim. That Vendita has brought. Okay. Well, let me raise my issues regarding whether it be, I guess, claim preclusion or issue preclusion. And that is, if it's claim preclusion, as I understand it, the rule is whether or not the claims could have been that are in the current proceeding are based upon any claim arising out of the same transaction or occurrence that was the subject matter of the previous action. And so I'm having difficulty here seeing how the subject matter here is any different than what the subject matter was in the divorce action when the financial mismanagement issue was adjudicated. Well, the subject matter, Your Honor, in the divorce case was the divorce court is a court of equity that divides the assets and deals with the property issue between two parties. Vendita Technology Incorporated was a third party defendant in that action. However, the divorce court only has the power to distribute and determine the identity of property in a divorce case. It does not have the right to by way of a tort, which is really the action that is brought here against Mrs. Selinger by Vendita Technology Incorporated. I don't understand a claim preclusion to be that formalistic to require that you actually had the opportunity to bring precise claim in the earlier proceeding. As long as it relates to the same transaction or occurrence, I think the rule is that you can be precluded by claim preclusion. And so the question is, is it the same transaction or occurrence in the two actions? But Vendita did not have the ability to bring the action for wiretapping or tortuous interference in the divorce case. The Ohio Supreme Court in Thompson v. Wing argued that claim preclusion doesn't apply if you didn't have the opportunity to bring it earlier, even if it relates to the same transaction or occurrence. Yeah, because it's a separate action. There are different courts of different jurisdictions. The two married people and divide their property. It does not have the ability to issue any rulings as it relates to a tort action between a non-spouse, even in this case. So this is not even a tort action between either of the two litigants in the divorce case or the husband and wife. This is really a case between a business entity that was in fact owned by Mr. Selinger at the time that Ms. Selinger engaged in the behaviors in which she did. The court treated Vendita as an asset in the divorce case. In Thompson v. Wing, as such, it was not a party in privity and is not asserting any previously litigated claims of Vendita. The purpose of issue preclusion exists whenever there's a relationship between party to the prior action and another party is close enough to confine that within the realm of res judicata. Vendita is only bound by the action to the extent that privity exists between itself and Mr. Selinger. And even then, the claim for which Vendita is seeking relief must have actually been litigated by the divorce courts. As I said earlier, Vendita litigation, pardon me. This is Judge Rogers. Actual litigation applies when you're talking about issue preclusion. It doesn't really apply when you're talking about claim preclusion. Is that right? Do I understand the law right? I think, yes, your honor. Okay, so you must be talking about issue preclusion when you say there wasn't a chance to raise it. Okay, thank you. Yes. The claim, further, the district court relied on claim preclusion. That's the basic concern we have here. You're attacking the court, which may be attackable, but you're using a weapon that is designed to attack a different holding. I think that's the bottom. I don't want to speak for Judge Bush, but that seems to be the bottom difficulty with your argument. I'm sorry. You have alternative arguments? I do, your honor. I don't want to speak for Judge Bush. Can we go on to the alternative arguments? That's fine. Certainly, your honor. I would also indicate that the court erred in granting Appley's motion in April of 2016-2020 for two reasons. One, there is a factual dispute regarding Mrs. Selinger's wrongful intrusion into the appellant's private activities, and the appellants had a reasonable expectation of privacy in their workplace. Pursuant to the Ohio Supreme Court in Sustan v. Fee, one who intentionally intrudes upon the solitude of another is subject to liability for invasion of his privacy, if that intrusion would be highly offensive to a reasonable person. Appellants need only demonstrate that the appellate caused a harmful intrusion into their private activities in such a manner that would outrage a person of ordinary sensibilities, pursuant to what the Ohio Supreme Court ruled in Welling v. Winefield. In this case, Mrs. Selinger directed her agent to enter the Vendita offices in the middle of the night, strategically install and surreptitiously install four pinhole cameras with microphones around the offices and ceiling and ductwork, and she did this to record the private conversations of Vendita employees. Her physical intrusion was both wrongful in manner and motive, regardless of her ownership interest in Vendita. She did this without informing her Vendita employees. She didn't engage in this and she did this to gain advantage in her then pending divorce proceedings. And because she didn't inform the employees of her intent or action, she should be liable under federal and state wiretapping laws, as well as the state claim for invasion of privacy. What authority do you have for this point that the highly offensiveness is established by her not having told them of the surveillance? Because as I understand it, the district court was saying because this was put in a, you know, in a public area of the workplace and was also in a different employee's office, that these that your clients didn't really have a reasonable expectation of privacy. You seem to be arguing because they weren't told that they were being surveilled, that that's why their privacy was interfered with. Is that your argument? That is part of the argument. However, what authority do you have for that point? What authority do you have for the point that your privacy is invaded if you're not told that you're being surveilled in a public area? I think that goes to the reasonableness and the reasonable expectation, both objective and subjective expectation of privacy within the indicated where, where in the, in that case, the directors of rabies control in Sumner County, Tennessee secretly recorded conversations among four of his employees by placing a recording device in a common office shared by all employees. The conversations were highly personal in nature and critical of the director. This court found that the employees had an objective expectation of privacy because their office was not accessible by anyone other than the employees. And only employees were present for those conversations. The court then further went further into the analysis by indicating that the employees had a subjective expectation of privacy because of the highly personal nature of the conversations. Now, just as in Doris, the employees in this case were in an office that wasn't accessible by two members of the public. Only employees were present at the time of the conversation. And there was no indication that ever intended their conversation to become public. So the appellants have that expert, that subject, that objective expectation of privacy. They further have the subjective expectation of privacy in this case, just as they did in Doris, because Mrs. Selinger in the record establishes she, prior to installing these scammers, she was barred from even having access to the Vendita offices due to her verbally infusing employees. The appellants were aware, Mrs. Selinger had no passcodes to enter the office, and they were aware of the highly contentious nature of the divorce proceedings. And they knew the other owner, Douglas Selinger, of one of the Vendita entities was out of town at the time. They were never given any notice by anybody, including Mr. Selinger, who ran the day-to-day operation, that they were subject to remote monitoring. They further refused to return to work until the recording devices were removed. So in one respect, because it wasn't open to the public, that establishes their objective expectation of privacy. And because of the personal nature, and given all of the surrounding facts of the Selinger's personal affairs, and the fact that they spoke freely in those recordings, indicate that they also had a subjective expectation of privacy. Mr. Clark, I know you've covered the preclusion issue extensively, but I just want to go back again and ask you, how do you distinguish the case of Shalar versus Shalar, which seems to indicate that a divorce court's findings can preclude subsequent tort claims? And I understand these two are different, but how do you distinguish that case? Well, thank you very much, Your Honor. Shalar is distinguishable in this case because Shalar involved two spouses, wherein the financial misconduct of one spouse against the other was, in fact, the conduct that gave rise to the claim for intentional infliction of emotional distress. This case here is involving a third party. It is not either one of the spouses. It is Vendita Technology Group, Incorporated. And so therefore, the issues are not similar enough because of the different nature of the parties. I would agree that if Mr. Selinger had brought this claim for intentional infliction of emotional distress, he would not have been able to prevail on that issue. However, this is Vendita. So are you really saying that it's the identity of the parties, that you don't have all the same parties in the divorce thing, and that's what keeps it from precluding subsequent tort claims here? That is one of our arguments, absolutely, that Vendita is only bound to an action to the extent that privity exists, and no privity exists with the divorce court ruling. I see that I'm out of time. May I finish answering? Okay. Well, just a minute. Let me see if either Judge Rogers or Judge Bush either have additional questions. Judge Bush, anything further at this time? No, I may have a question or two. I'm going to ask you to hold that thought for your rebuttal argument. I know it's a little wild, but if you could hold that. Mr. Kemp? Thank you, Your Honor. May it please the court. Matthew Kemp on behalf of Cheryl Selinger. It's quite plain from the record here that this case is simply a tactic by Doug Selinger to gain leverage in his divorce case against Cheryl. This is his fourth attempt to come after Cheryl for the same conduct. He went to the local police and prosecutors, claiming that she had wiretapped his business, leaving out the fact that she was actually the majority owner of the certified woman-owned business. Once the full story came out, they dropped the case. He went to the FBI with the same story. They declined to pursue it. Then he asked the divorce court to award financial misconduct damages based on the same- My question here is not so much about her ex, but about the other employees who didn't know that she was surveilling them. I think that's the point your opposing counsel was making as the basis for allowing the claims to go forward. What do you say to his point about Doris V. Apsher? I think Doris V. Apsher is easily distinguishable on a number of fronts, Your Honor. What Doris V. Apsher says is that there must be both a subjectively reasonable and objectively reasonable expectation of privacy in the particular communications that the plaintiff claims are actionable. Then the Huff v. Spa case, which is the other key precedent from the circuit, clarified that what those questions mean in practice is, number one, did the person who was recorded actually exhibit an expectation of privacy? Number two, was that expectation objectively reasonable? There's no evidence in the record here at all that Mr. Andrews and Mr. Smith had any subjectively or objectively reasonable expectation of privacy in the particular communications at issue here. As far as the subject of prong is concerned, there's no testimony in the record from Mr. Andrews or Mr. Smith whatsoever, no declarations, no depositions, so this court has no evidence at all of what their own subjective expectation of privacy was. To put it in terms of the Huff v. Spa test, they certainly did not exhibit any expectation of privacy at the time they made the communications. I think the most striking thing about their arguments, both in the district court and here in appeal, is that there is no they submitted them to the district court. They could easily say, here is the recording that shows that there was a subjective expectation of privacy or objective expectation. But I mean, how can you say that the recording itself would have demonstrated that there was an expectation of privacy? I mean, wouldn't you look generally to employees' workplace environment to suggest that there is some expectation of privacy? I mean, how would the recording show that? Would they have to say on the recording, I expect my conversation here to be private or whatever? Well, I think if you look at Doris v. Absher and Huff v. Spa for that matter, the recordings themselves would show you that it's completely distinguishable from Doris. Number one, the conversations here, and the district court did look at the recordings and describe them in its summer judgment ruling. So number one, the content of the conversations was largely idle chit-chat between coworkers. There's nothing sensitive or private about the content of the conversations. And this is in stark contrast to the Doris case where the conversations among coworkers had no comments about their boss. Number two, they were never recorded in any location that could arguably be considered private. It was in common areas of the office or in or near other people's offices. And again, that's very different than the Doris case where the recording device was placed in the employee bathroom. That's obviously not an area where you would have an expectation of privacy. And then number three, that the conversations involved other individuals or could be overheard by other individuals. Again, very different than the Doris case where the employees took great care to ensure that they were not overheard by anyone. So I don't think the general fact that employees are in an office comes anywhere close to establishing sort of a prima facie case of reasonable expectation of privacy. I want to respond to a couple of the points that Mr. Clark made in his argument here. He's doubling down on the fiction, frankly, that this Vendita Technology Group Inc. was owned by Mr. Sollinger solely. The record is quite clear, and I think it's undisputed that all of the Vendita entities operated as one collective going concern. That's admitted by Ms. Savage, who was Corporate Counsel to all of the Vendita entities in her deposition. So the idea that there was some separate entity that had this office that Carol Sollinger was not allowed access is simply made up. There's no support for it in the record. And also the notion that Mr. Andrews and Mr. Smith were simply these two employees trapped in the middle of two owners getting a divorce, I think, is not backed up by the record either. Their involvement in this case, I think, is very clear because Doug Sollinger wanted them to be involved and because they wanted to be involved. He's using it quite candidly as part of his litigation vendetta against Carol. And there's no evidence at all suggesting that anything they said would not have been said in the presence of Carol or Doug or anyone else. Again, pointless to the recordings that you think show a reasonable expectation of privacy. They've never done it. And also to use Doug's absence from the office during the time, the limited, very limited time, I think that's an important fact to keep in mind too. These things were in there for two or at the most three days. To use Doug's absence from the office during that time as a positive fact from them, I think is disingenuous. So remember that Doug was an original plaintiff here, claiming that he personally had his conversations intercepted and that he had claims under the Wiretap Act. Obviously, he knew all along that he had not been in the office during the limited period of time that these devices were installed. And for them to turn around and not explain that. Counsel, you're not arguing that the reason somebody appealed or somebody sued affect whether they're correct on the law, are you? I'm not, but I think it is kind of important to frame the picture of this case here, Your Honor. Again, we're going to get out the frame and just kind of see what the law is. Sure. So let me get to the second independent reason that the wiretapping claims should be dismissed, which is that Carol Sollinger never actually intercepted any communications. She never received the recordings. And this is an essential element of a civil wiretapping claim. And the record at this point is quite clear. The person who set up the camera system, Mr. Spiegel, did the installation, testified in his deposition that the transmission part of the system, the remote access feature, which is the only way that Carol could ever access the recordings, never worked. Carol never even knew that there were recordings made until this case and the equipment was analyzed. So Mr. Spiegel testified quite clearly that he could never get it to work. He never even gave Carol the software or passcode needed to view any of the recordings. So in the statute, both the federal and the Ohio version that are at issue here in this case, the keyword and the definition of intercept is acquisition. And Carol would have needed to somehow acquire the communications for these actions to be actionable under the statute. And I just don't think that you can fairly say that she acquired it. How do we know what the conversation, we know that the conversations you say were chatty and not substantive, right? Yes. I mean, the district court. How do we know that it didn't work? The recording device that, thank you, guys, is an important distinction. The recording device itself apparently did work and recorded. It did work and recorded the conversations to an internal hard drive, essentially, that was located on the premises. And this is all laid out very clearly in Mr. Spiegel's deposition. So this is where I'm getting these facts from. But the system was designed so that Carol could watch the video feed or somebody could watch the video feed from a remote access point somewhere outside of the office. And that's the part that Mr. Spiegel says quite clearly never worked. There was never any way for Carol to actually access the video feed. So yes, it was recorded. It was sitting on a hard drive in the office somewhere. At least they have facts that would suggest that. So I'm not disputing that for purposes of summary judgment. But she never, it was physically impossible for her to receive the recordings or to in any way view the recordings. And I think that's... Let me ask then, under the statute, if you record something, there's a reasonable expectation of privacy, you record it. And then while you're driving those recordings home to listen to them, there's a car crash and the recordings are destroyed. That's not a violation? I think that's distinguishable from this case, Your Honor, because in that case, whoever was driving the car home actually did acquire and physically possess the recordings for at least some period of time. I think damages there would be limited because the recordings were never used, same as in this case. But here, we've got a situation where Carol could never physically access the recordings at all and it was literally impossible for her to do that. And those big facts are all undisputed. This was all taken from Mr. Spiegel, who's the third party that installed this equipment. The state law... If you hire someone to record someone and they record him and then you never pick the things up, then you're not liable. Is that the idea? I'm not sure I would go that far, Your Honor. I think, again, the situation that we have here is distinguishable from your hypothetical because not even Mr. Spiegel could access the recordings. Literally, no one could until you actually... We have, so that's what makes me wonder how you can say no one could access them. Well, I mean, after this case... Today, that's what I'm having trouble understanding. After this case was filed, defendants hired an expert forensic team to download the recordings from that archive. That's the only reason we even know they exist, Carol. Until that time, no one knew whether they were recordings or not. I'm sorry, Your Honor, I didn't hear that last part. That answers my question. Thank you. Just to reiterate, the state statute, the Ohio statute, is virtually identical to the federal statute and I think subject to the same analysis. And then all of the state law tort invasion of privacy claims fail for the same reasons. There was no reasonable expectation of privacy in these conversations and there was no actual invasion of privacy in any event for the reasons that I just went through. So, I'll turn now to the claims of Vendita Technology Group, Inc. And I'd like to very briefly just take a step back and look at the overall picture with the Vendita business. At the time this lawsuit was filed in March of 2017, the Vendita entities, and I mentioned this briefly before, it was Vendita Technology Group, Inc. and Vendita Technology Group, LLC. They operated together as one integrated business. They were essentially alter egos of one another. What was their name on the lease for the facility? The name on the lease was Vendita Technology Group, period, full stop. It did not specify Inc. or LLC. And I think it's very clear if you look at the deposition of Ms. Savage in the exhibits there too, Carol was actually in charge of negotiating the lease on behalf of the business. She took the lead in negotiations with the landlord. So, is the evidence that the parties understood that the group without Inc. or LLC referred to both entities? Yes, yes, that's correct. And I would further add that the notion that the entities would have separate offices is frankly kind of absurd. They worked together as one integrated entity. There was no reason for one to have one office and one to have another office somewhere else. And the overall business was certified as a woman-owned business, the national certification entity, because Carol was the majority owner and the CEO. And so, contrary to the story that, frankly, Doug fed to the police and tried to push to the triforce here, Carol was not some outsider to the business trying to interfere in her husband's business. She was front and center. She was the CEO, and she was the majority owner. So, in March 2017, with the divorce trial just a couple of weeks away, we have the spectacle of Carol getting sued by her own business, or at least a part of her own business, and then sued her for wiretapping and trespassing, tortious interference with business relationships, the same thing that we see in the complaint in this case. And meanwhile, at that time, Doug was making exactly the same allegations against Carol in the divorce case, in the context of the financial misconduct proceeding. So, with that background in mind, I think it's fairly easy to see why the district court's finding of race judicata, and it was a claim conclusion based on the divorce court action, was entirely correct. The key document here on this argument to see what Doug was arguing in the divorce case is record number 88-8, and that's Doug's post-trial memorandum in the divorce court. And the arguments there read very similarly to the complaint in this case. Doug sought a financial misconduct award for wiretapping and trespass, for interference with the business relationship, and for interference with Vendita's WBENC certification, the woman-owned business certification. I would say that the last allegation is kind of laughable on its face, given that Carol was the reason for Vendita having the WBENC certification in the first place. But in any event, the divorce court judgment necessarily dealt with exactly the same substantive issues that were at issue in this case. They were packaged in a different type of claim. That's certainly true. In the divorce court, it was a financial misconduct claim by Doug, but when you look at what the substance of the financial misconduct claim is really driving at, it's whether Carol did financial damage to a marital asset, namely the company, the Vendita business. And the divorce court said no, there was no damage to Vendita. Your adversary says, well, it's not by me because you didn't have the same identical parties to the proceeding in the divorce court, and hence your claim preclusion argument would not prevail. How do you respond to that? A couple of responses, Your Honor. First of all, you did have the identical parties. Vendita Technology Group Inc. was a party to the question in the financial misconduct claim in the divorce case was, was Vendita harmed? And Doug had every opportunity to prove in the divorce court that Carol's actions harmed Vendita Technology Group. He failed to do so. And now the question in this case, or the question that plaintiffs want to bring in the trial court is, was Vendita harmed by Carol's actions? Exactly the same actions that Doug was arguing about in the divorce case. So the parties were identical, and moreover, identity of parties is not a strict element of claim preclusion. You need privity of parties. And I think it's quite clear that Doug and Vendita Technology Group Inc. are in privity for purposes of claim preclusion. Doug is now, after the divorce court action has been concluded, he is now the sole owner of all of the Vendita entities. So the interests there are clearly identical, which is what you need for privity and claim preclusion. So I think the bottom line here is this case is really a second bite at the apple by Doug, or really the fourth bite at the apple if you count his attempts to go to the police and the FBI. And we need to keep in mind now that, again, the sole owner of the business is Doug. Let me address with my limited time what I'll call a provisional appeal of the district court's denial of the motion to compel. This issue is only relevant if any of plaintiff's claims survive, which we don't think they should. And all we're asking for here is an order requiring the district court to actually assess Carroll's motion to compel on a document-by-document basis. So the original genesis of the motion to compel was a dispute over privilege. Plaintiffs claimed that certain communications with corporate counsel Kim Savage were privileged. The district court never actually determined that any particular document should be produced or not produced based on privilege. It essentially punted on that issue, asked the parties to work it out. Much later in the case, it summarily determined without any argument that the documents that were on that privilege law were irrelevant to the claims remaining at that time. And I think that conclusion is clearly incorrect, and that's the conclusion that we're challenging on appeal. The privilege law itself discloses that many of the communications dealt with the wiretapping claims, so they're obviously relevant. All we're asking for that, then, is if any of the claims do survive, and again, we don't think they should, that the district court should assess the documents on a document-by-document basis for relevance and privilege. Unless there are any further questions, I thank the court, and we ask that these submissions and decisions be affirmed. Thank you, Mr. Kemp. Mr. Clark, you'll have your rebuttal time at this time. You're on mute. Thank you very much, Your Honor. I think it's important to go back and look at the district court's claims regarding the issue of preclusion. The district court did not in any way delineate what type of preclusion either issue or claim in its ruling, right? If this is, in fact, res judicata and claim preclusion, then our argument is that we've also raised in our brief is that Vendita wasn't able to bring claims or tort in the domestic relations court. The domestic relations court is a court of equity. It's not a court of law, and so, therefore, it is unable to litigate its claims there. The only proper way to litigate, the only way in which Vendita can litigate its claims is either in state or federal court. If it comes down to issue preclusion, then we have to look at the goods and factors that the Ohio Supreme Court did in saying that if a party seeks to preclude issues, then they have to determine that the issues were actually litigated, directly determined, and essential to judgment in the prior action. Nothing involving wiretapping or invasion of privacy or any other intentional tort was essential to the to the domestic relations court's decision in the Selinger's divorce. The only thing that the divorce court did consider was whether or not there was financial misconduct on the part of Mrs. Selinger in order to affect the valuation of Vendita itself, and so, therefore, regardless of what type of preclusion that their support was relying on, you know, we don't think that it's precluded either by issue or by claim. I would also like to point out that in the affilee's brief, as it relates to the ownership interests of Vendita Technology Incorporated, in page four of their brief, in our case, they even concede that Vendita Technology Incorporated was 100% owned by Douglas Selinger. Yes, there were integrated entities, but the company that is bringing the cause of action that is before the court today is Vendita Technology Incorporated. I would also like to go back to this court, to Mr. Kemp's argument, trying to distinguish the facts in this case as opposed to the facts in Doris v. Absher. Mr. Kemp improperly states that the recording devices in that case were only installed in the bathroom. In fact, they were installed in a common office area that was shared by these four employees. That's very similar to the case that we have here, and so, we believe that Doris is on point and that there is both an objective and a subjective expectation of privacy based upon the fact, the objective being that the parties were not, that the office was not open to the public, and then the subjective factors regarding the personal nature of the communications. I think this court is properly scrutinizing Ms. Selinger's argument here about the, in trying to draw a distinction between acquisition and interception, and in fact, the district court never even got to that level of analysis. I believe the exact court was a Tempest and a Teapot. However, we contend that the interception happened when the recording was transferred to a remote server. It is absolutely immaterial whatsoever for, um, that Mr. Selinger never, in fact, listened to any of these recordings. Really, what's at issue here is the outrageous nature of the recordings themselves, right, and the intrusion upon the privacy and the private matters of one's employees, of Mr. Selinger's employees, as we have laid out here. And so, for that reason, we would ask that you overturn the court's decision from June of 2019, the motion in limine from 2019, or from October of 2019, as well as the summary judgment from April 16th of 2021. Thank you, Mr. Clark. Mr. Kemp, your matter is submitted, and we will issue a decision in due course.